CENTRAL TRUST CO. *v.* SHEFFIELD & B. COAL, IRON & RAILWAY CO., (ANNISTON LOAN & TRUST·CO., Intervenor.)

*(Circuit Court, N. D. Alabama, N. D.   December 23, 1890.)*

1. RAILROAD COMPANIES—RECEIVER'S CERTIFICATES—ESTOPPEL.
    Where, by consent of all parties, the receiver of a railroad company, though not engaged in operating the road, is authorized by order of court to issue certificates which shall constitute a lien on the company's property superior to certain prior mortgages, and the money obtained on such certificates is used in preserving and improving the property, the purchasers of the property at a subsequent sale to foreclose said mortgages are estopped from denying the validity of the certificates.

2. EQUITY—INTERVENTION—PLEADINGS—ADMISSION.
    Where, on the *ex parte* application of the receiver, said order is modified so as to declare some of said certificates invalid, with the privilege to the holders of such certificates to intervene in the suit and have their validity adjudicated, a petition in intervention by such certificate holders, which recites the entry of the modified order, does not thereby admit the invalidity of the certificates.

3. SAME—PREMATURE SUIT.
    The fact that the principal of such certificates is not due does not make the intervention premature, if the interest thereon is then due and unpaid.

4. SAME—PARTIES.
    The receiver who issued the certificates, and who has in his hand the funds from which they should be paid if valid, is a necessary party defendant to such intervention.

5. SAME.
    The complainant in the original suit is not a proper party defendant to such intervention, where it appears that he no longer has any interest in the fund in controversy, and no relief is asked as against him.

In Equity.   On demurrer to intervention.

In this cause the Anniston Loan & Trust Company files an intervention, setting forth as follows:

"(1) Your petitioner, the Anniston Loan and Trust Company, a body corporate under the laws of the state of Alabama, respectfully represents unto your honors that on, to-wit, the 11th day of July, A. D. 1889, a decree was rendered by your honors authorizing and empowering Jacob G. Chamberlain, receiver of the Sheffield and Birmingham Coal, Iron, and Railway Company, to issue receiver's certificates or debentures in a sum not exceeding one hundred and fifty thousand dollars, bearing a rate of interest not exceeding 7 per cent. per annum, and constituting such certificates, when issued, a first lien on all the property, rights, appurtenances, and franchises of the said Sheffield and Birmingham Coal, Iron and Railway Company, as set forth and described in two mortgages or deeds of trust, the first executed on the 2d day of January, 1888, and the second mortgage executed on the 1st day of June, A. D. 1888, together with all other properties, rights, and franchises of the said Sheffield and Birmingham Coal, Iron, and Railway Company, of every nature and description, wheresoever situated, and also a lien upon whatever residue of the earnings, incomes, and profits of said property that there may be, which have accrued since the appointment of the receiver, and after deducting operating expenses, and the cost of needed repairs, and the expenses of the receivership; said decree and said certificates further providing that said lien should be prior to all other liens of any kind whatsoever against said property. The said second mortgage executed June 1, 1888, as aforesaid, although formally a lien upon a railroad known as the 'Sheffield and Birmingham Railroad,' was not a lien on said railroad when said certificates were issued, copies of which said mortgages are attached as Exhibits A and B to the original bill of complaint in the above-entitled cause, to all of which reference is hereby made, and all of which more fully and at length appear in and by said decree of this court in said cause, and to which reference is hereby made, and the same made a part hereof, as though they were herein particularly set out at length. Said receiver's certificates will be produced by the complainant on the trial of said cause.

"(2) That said Jacob G. Chamberlain, receiver as aforesaid, acting under and by virtue of the authority vested in him by said decree, engaged one Charles D. Woodson, president of the First National Bank of Sheffield, Ala., as his agent to negotiate the sale of eight of said certificates, to-wit, Nos. 1, 2, 3, 8, 9, 10, 11, and 12, respectively, of the par value each of five thousand dollars, bearing 6 per cent. interest, payable at the National Park Bank, New York city, three years after date, the said certificates 1, 2, and 3 being dated September 19, 1889, and the said certificates Nos. 8, 9, 10, 11, and 12 being dated, to-wit, the 10th day of October, 1889, with interest payable semi-annually, and said certificates 8, 9, 10, 11, and 12 were duly placed in the hands of said Charles D. Woodson to be negotiated and sold by him, with full power and authority to act for and represent the said Jacob G. Chamberlain in the matter of the sale of said certificates. That under and by virtue of said authority, and while the said certificates were in his possession and control, on, to-wit, the 10th day of October, 1889, the said Charles D. Woodson sold the same to one Duncan T. Parker, who is now dead, at and for the sum of, to-wit, five thousand dollars for each certificate, and the said Parker thereupon paid the said Woodson the said price of the said certificates, and thereupon they were turned over and transferred to him by said Woodson.

"(3) That afterwards, on, to-wit, the second day of November, 1889, the said Duncan T. Parker sold, transferred, and delivered said certificates Nos. 8, 9, 10, 11, and 12, for a valuable consideration, to-wit, for the sum of five

thousand dollars ($5,000.00) each, to your petitioner, and the said certificates are now owned and held by petitioner.

"(4) That it is the duty of the said Jacob G. Chamberlain, receiver, to pay the semi-annual interest and the principal of said certificates out of any funds or property in his hands as such receiver; that the semi-annual interest on said certificates 8, 9, 10, 11, and 12, amounting in the aggregate to, to-wit, seven hundred and fifty dollars, ($750.00,) due on, to-wit, the 10th day of April, A. D. 1890, at the National Park Bank of New York city, were on that day presented at said bank for payment of the interest thereon, but such payment was refused; and petitioner since then has frequently called upon and requested the said receiver to pay the interest on said certificates, but he has wholly failed and refused to do so, though the funds in his hands are amply sufficient for the payment thereof.

"(5) That on the ———— day of ————, 1889, the said Jacob G. Chamberlain duly reported the sale of said receiver's certificates 8, 9, 10, 11, and 12, of five thousand dollars ($5,000.00) each, by C. D. Woodson, and at the same time reported the sale of certificates Nos. 1, 2, and 3, also of five thousand dollars ($5,000.00) each, to the United States circuit court of the northern division of the northern district of Alabama, and that the proceeds of said sale had been placed by said Woodson to the credit of said receiver at the First National Bank at Sheffield, Ala., less 6 per cent. commission for selling.

"(6) That on, to-wit, the 3d day of December, 1889, A. D., a decree was rendered in said court, foreclosing the mortgage above referred to, and ordering the sale of the property embraced therein, and expressly ordering that the purchaser at said sale should be required to pay the receiver's certificates embraced in schedule 'B' attached to the said decree, among which are the said certificates Nos. 8, 9, 10, 11, and 12, owned and held by the petitioner, all of which more fully appears in and by said decree, to which reference is hereby made, and the same made a part hereof, as though herein set out at length. It was further ordered by said decree that the purchaser of said property should pay said certificates, in addition to the amount bid at said sale for said property.

"(7) That, on January 4th, said court made an order purporting to modify the former decree of December 3, 1889, so far as to authorize the purchaser at said sale to contest the validity of said certificates Nos. 8, 9, 10, 11, and 12, sold by said C. D. Woodson as agent for said receiver for said D. T. Parker, as aforesaid, and purchased from said Parker by petitioner; that said decree of January 4, 1890, was made after said D. T. Parker had purchased the said certificates from said C. D. Woodson, the duly-authorized agent of the receiver for the sale thereof, in good faith, and for a valuable consideration, and sold them to petitioner, in good faith, for a like good and valuable consideration, and after said receiver had reported said sale to said court, and reported that the money paid for the purchase of said certificates was on deposit to his credit in the First National Bank of Sheffield, Ala., and without any notice to said D. T. Parker, or petitioner, the owner of said certificates; that on the 21st day of April, 1890, said property was sold under said decree of foreclosure, and a part of the same was purchased by Napoleon Hill, trustee, for certain parties, for three hundred and fifty thousand dollars, ($350,-000.00,) and a certain other part of said property was sold to James C. Neely, trustee, for other parties, for one hundred and fifteen thousand dollars, ($115,-000.00,) which said sale was duly reported to said court, and confirmed on May 10, 1890, subject to all liens created upon said property by the receiver, under the order of the said court, and required by the previous or subsequent orders of said court to be paid by said purchaser, all of which more fully appears from the report of sale made by the special master, D. D. Shelby, in

said case, and the decree entered in said cause by said court, and on file in said court, to which reference is here made, and the same made a part hereof, as though it was herein particularly set out at length.

"(8) That the bondholders under said mortgage are very numerous, and unknown to your petitioner, and it is not practicable to make them parties to this intervention."

The relief prayed for is a decree requiring the accumulated interest and principal due on said receiver's certificates to be paid out of any funds or property in the hands of, or under the control of, the receiver; and that the amount due upon said receiver's certificates be declared a lien upon the property mentioned in the decree of foreclosure; and for sale of the same, and for general relief.

The defendants unite in a demurrer to the said bill of intervention, and assign as grounds:

"*First.* That it appeareth by the petition and intervention that said Anniston Loan & Trust Company is not entitled to the relief prayed for against those defendants, or either of them. *Second.* That it appears from said petition and intervention that there is a misjoinder of the parties, and that neither said Central Trust Company of New York, nor said J. G. Chamberlain, receiver, is in anywise interested in said litigation, or properly a party thereto. *Third.* It appears by said petition and intervention that said receiver's certificates therein referred to, three of them for $5,000 each, dated September 19, 1889, and three of them for $5,000.00 each, being dated 10th October, 1889, are not due until three years after the dates thereof, respectively, and that petitioner, claiming to own and hold five of said receiver's certificates, for five thousand dollars each, dated 10th of October, 1889, has no right to sue for or recover the principal, or any part thereof, of said certificates, the same not having become due. *Fourth.* Because it appears that petitioner has no right whatever to any suit or action upon said five receiver's certificates, numbered respectively 8, 9, 10, 11, and 12, dated 10th of October, 1889, except for past-due interest thereon. *Fifth.* Because it appears from said petition and intervention of the Anniston Loan & Trust Company, and by proceedings and records in the cause of the *Central Trust Company of New York* vs. *Sheffield & Birmingham Coal, Iron & Railway Co.*, to which reference is made as if the same were particularly set out at length in said petition and intervention, that said receiver's certificates were issued only upon the property, including the furnaces, coal lands, coal mines, and coke ovens, and that said certificates were not issued upon or made a lien on any line of railway; and that therefore said certificates were issued illegally, and without authority in law or equity, and are in no sense a lien upon the properties referred to in said petition and intervention, prior in right or superior to said two mortgages referred to in said petition and intervention. *Sixth.* That it appears from said records and proceedings in said cause of the *Central Trust Company of New York* vs. *Sheffield & Birmingham Coal, Iron & Railway Company and another*, which are particularly referred to in said petition and intervention, that, at the time of the order, to-wit, on the 11th day of July, 1889, authorizing said J. G. Chamberlain, as receiver, to issue said receiver's certificates, said receiver did not have under his custody or control any line or lines of railway that he was operating or managing; and that said certificates were not issued in an action then pending for the foreclosure of a railway mortgage or mortgages; and that said certificates were so illegally and improvidently issued, and constitute no lien upon said properties referred to in said petition and intervention of the Anniston Loan & Trust Company. *Seventh.*

That it appears that there is no copy or copies of said five receiver's certificates attached to the petition and intervention of said Anniston Loan & Trust Company, nor is there any offer to produce the originals of said certificates at the hearing. *Eighth.* That it appears by said petition and intervention, and the records and proceedings in this honorable court, therein referred to and made a part of said petition and intervention, that the order and decree of this court of 4th January, 1890, modifying the decree of foreclosure and sale of ,3d December, 1889, together with the petitions, allegations, and proof upon which said order and decree of 4th January, 1890, was made, are true and undisputed; and, under these facts, the Anniston Loan & Trust Company are not entitled in law or in equity to set up said five receiver's certificates, or to recover anything from any person or corporation upon the same, or enforce any lien therefor."

*John B. Knox,* for intervenor.
*Henry B. Tompkins,* for defendants.


PARDEE, J., (*after stating the facts as above.*) **1.** The Central Trust Company of New York is the party plaintiff in the suit in which the intervention is filed, and had a direct interest when the receiver's certificates were issued. The record shows that, by proceedings subsequent to the decree, the said trust company has no longer any interest in the validity of the receiver's certificates forming the subject of this intervention. No relief is asked against or affecting said trust company. It may be dismissed without prejudicing the rights or remedies of the other parties. Jacob G. Chamberlain, the receiver, is alleged to have issued said certificates, and is charged with having in his hands funds sufficient and applicable to pay the same, and direct relief is prayed against him.

**2.** If it be true that the principal of the said receiver's certificates, which form the basis of this intervention, is not yet due, still the interest thereon is due, and the intervention can be maintained therefor.

**3.** The demurrer appears to present a proposition that, as the receiver was not in possession of, nor operating, any line of railway, and as the suit pending was not for the foreclosure of any railway mortgage, there was no authority in the court to authorize the issuance of, nor in the receiver to issue, receiver's certificates which should constitute a lien on the property in the possession of the court; and, particularly, a lien prior in right to the two mortgages which were the subject of the foreclosure suit. Counsel have submitted no argument on this proposition, nor cited any authority. It seems to me that if the proposition is sound, which is not granted by any means, the real defendants in this intervention, the purchasers at the foreclosure sale, are estopped from setting it up. Receiver's certificates were issued by consent of the parties; by the same consent they were made a prior lien on the property in the possession of the court; moneys obtained thereon were used for the preservation and improvement of the property; and the property was sold and purchased with the clear understanding and agreement that the valid outstanding receiver's certificates constituted a prior lien which the purchasers assumed and undertook to pay.

4. It is contended that, as it is a well-settled principle that a pleading is to be taken and construed against the pleader, and that, as in this intervention, the intervenor refers to the records of the court in the case in which he intervenes, and, particularly, to a certain decree modifying the main decree in the case, that thereby he admits the facts alleged upon which the modifying decree was based. This is the only ground of demurrer upon which counsel have submitted any argument. An examination of the record shows that the decree was modified upon the *ex parte* application of Chamberlain, the receiver, setting forth that the five certificates, which are the basis of this intervention, had been disposed of by one Charles D. Woodson, without his authority, and that the proceeds had not come to his hands; and thereupon the decree was modified in regard to the terms of sale, as follows:

"That there be stricken from the said decree these words: 'And expressly subject to the receiver's certificates heretofore authorized to be issued by said Jacob G. Chamberlain, the receiver, to an amount not exceeding one hundred and fifty thousand dollars, ($150,000.00;)' and that, in the place and stead of said words, there be inserted these words: 'And expressly subject to the receiver's certificates heretofore authorized to be issued by said Jacob G. Chamberlain, the receiver, to an amount not exceeding one hundred and twenty-five thousand dollars, ($125,000.00,) and that the twenty-five thousand dollars of said receiver's certificates, disposed of by said C. D. Woodson, the same being five certificates of five thousand dollars ($5,000.00) each, and numbered 8, 9, 10, 11, and 12, dated October 10, 1889, and set forth in the "Schedule B" of said decree, be not included in said amount of one hundred and twenty-five thousand dollars, ($125,000.00,) but that the purchasers of said property at the sale under said decree take the same subject to the right to resist the payment of said five certificates so disposed of by said Woodson; and that the validity of said five certificates be adjudicated in this court upon a proper case to be made by the parties in interest.' "

The intervention asserts that this modification of the decree was made subsequent to the time that the intervenor's rights had attached and accrued, and it was necessary and proper for the intervenor, who, under the terms of the aforesaid modified decree, was given the right to intervene in this cause, to state the basis of his right to intervene, and thereby to refer to the order of court made as aforesaid, but to hold that, by intervening and referring to his authority therefor, he admits the truth of the statements contained in the *ex parte* statement of the receiver upon which the order was made, is to hold that he admits away his entire case, and this in direct opposition to the express and sworn averments of his intervention. The case seems to turn upon the fact whether or not the proceeds of the five receiver's certificates sued upon by the intervenor came to the hands of the receiver. The decree throwing a cloud upon intervenor's rights gave him authority to intervene and assert them. It would be a vain thing to give him such right if coupled with a condition that, in order to exercise it, he must admit as truth a state of facts which kills his case. The purchasers of the property referred to in the intervention took the same with the express understanding that the receiver's certificates held by the intervenor had been issued under orders of the court importing a lien on the property they purchased, and were

outstanding; and, further, might be presented as a valid indebtedness of the receiver. They were granted the right, and they assumed the burden of contesting their validity. In their interest the contest was restricted to this court. The intervention fairly presents the case for them to contest. The demurrer will be sustained, so far as the Central Trust Company of New York is concerned, but be overruled as to the other defendants, who will be required to answer the said intervention by the rule-day in February, 1891.